**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BERNITA RICHARDSON,** *as Administratrix of the Estate of Jimmy Richardson*,

                           **Plaintiff,**

     vs.                                      9:17-cv-0420
                                                  (MAD/TWD)

**CORRECTIONAL MEDICAL CARE, INC.,** *et al.*,

                           **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**LAW OFFICES OF ELMER R. KEACH, III, P.C.**   **ELMER R. KEACH, III, ESQ.**
One Pine West Plaza - Suite 109                  **MARIA K. DYSON, ESQ.**
Albany, New York 12205
Attorneys for Plaintiff

**STEINBERG, SYMER & PLATT, LLP**          **JONATHAN E. SYMER, ESQ.**
Steinberg, Symer & Platt, LLP
27 Garden Street
Poughkeepsie, New York 12601
Attorneys for Defendants Correctional Medical
Care, Inc., CBH Medical, P.C., Emre Umar

**THUILLEZ, FORD LAW FIRM**                **DAISY F. PAGLIA, ESQ.**
20 Corporate Woods Boulevard - 3rd Floor     **MOLLY C. CASEY, ESQ.**
Albany, New York 12211-1715
Attorneys for Defendant Russell Fricke

**GOLDBERG SEGALLA, LLP**                 **CHELSEA E. MANOCCHI, ESQ.**
8 Southwoods Boulevard - Suite 300           **JONATHAN BERNSTEIN,**
                                                     **ESQ.**
Albany, New York 12211-2526
Attorneys for Defendants Schenectady County
and Dominic D'Agostino

**Mae A. D'Agostino, U.S. District Judge:**

                                **MEMORANDUM-DECISION AND ORDER**

                                        **I. INTRODUCTION**

Plaintiff Bernita Richardson, as administratrix of the estate of Jimmy Richardson, brought this action alleging federal and state claims against Defendants Correctional Medical Care, Inc. ("CMC"), CBH Medical, P.C. ("CBH"), Emre Umar, John Doe Numbers 1-3 (collectively, the "CMC Defendants"), Schenectady County, Sheriff Dominic D'Agostino, and John Doe Number 4 (collectively, the "County Defendants"), and Doctor Russell Fricke.  *See* Dkt. No. 30-4.[1] Plaintiff's claims arise out of Mr. Richardson's medical care while incarcerated at the Schenectady County Jail.  Presently before the Court are three separate motions to dismiss and a motion to strike filed by Defendants, as well as a motion to amend filed by Plaintiff..  *See* Dkt. Nos. 18, 19, 20, 30.  For the following reasons, Plaintiff's motion to amend is granted, Defendants' motion to strike is denied, and Defendants' motions to dismiss are granted in part and denied in part.

## II. BACKGROUND[2]

### A.    The Decedent's Medical Care

Jimmy Richardson died on January 17, 2016.  *See* Dkt. No. 30-4 at ¶ 15.  In the month leading up to his death, Mr. Richardson was in Schenectady County Jail two different times.  First, he was admitted on December 18, 2015 and released on December 22, 2015.  *See id.* at ¶¶ 16, 19.  Second, Mr. Richardson was readmitted to Schenectady County Jail on January 4, 2016, where he remained until he died in the early morning hours of January 17, 2016.  *See id.* at ¶¶ 20, 32.

---

[1] John Does 1-3 are unidentified medical staff who were responsible for providing medical treatment to Mr. Revels, and John Doe Number 4 was employed as a corrections officer at the Schenectady County Jail.  *See* Dkt. No. 30-4 at ¶¶ 13-14.

[2] The following facts are based on the allegations in Plaintiff's proposed amended complaint.  *See* Dkt. No. 30-4.

When he entered the jail on December 18, 2015, Mr. Richardson was not particularly healthy. He suffered from Brugada Syndrome, Chronic Obstructive Pulmonary Disease ("COPD"), hypertension, seizure disorder, chronic pain, and he used a pacemaker, had recently undergone gastric bypass surgery, and had a history of heart attacks. *See id.* at ¶ 17. Mr. Richardson took numerous medications to treat his various conditions, including Norco and Lortab, which are opioid pain medications. *See id.* During Mr. Richardson's first period of detention in Schenectady County Jail in December 2015, he did not receive any of his prescribed medications. *See id.* at ¶ 18. As a result, he was experiencing a variety of symptoms, including withdrawal from his pain medications, before being released on December 22, 2015. *See id.*

After being admitted to the hospital for severe chest pain, shortness of breath, suicidal ideations, and diaphoresis, Mr. Richardson was stabilized and readmitted to Schenectady County Jail on January 4, 2016. *See id.* at ¶ 20. The following day, Mr. Richardson was evaluated by Defendant Fricke, the doctor at Schenectady County Jail, who confirmed Mr. Richardson's medical conditions. *See id.* Over the following twelve days, Mr. Richardson frequently complained about chest pain and other medical issues, including severe pain, knee pain, anxiety, and dizziness. *See id.* at ¶ 21. Mr. Richardson's medical records indicate that he reported his complaints on January 7, 9, 10, 11, 12, and 14, 2016. *See id.* The complaints reflect a sense of urgency. *See id.* at ¶ 24. In a January 11, 2016 health services request, Mr. Richardson pleads for his medication, and says "[I] need to see the Dr. I am hurting so bad. I need help!!!" *See id.*

Plaintiff also alleges that Mr. Richardson made additional complaints and showed additional symptoms that were not reflected in his medical records. *See id.* First, an inmate reported observing Mr. Richardson repeatedly collapse in the days leading up to his death, but there is no mention of this in his medical records. *See id.* at ¶ 22. Second, a different inmate

3

reported that Mr. Richardson was complaining of chest and left arm pain in the days leading up to his death. *See id.* at ¶ 23. The inmate sought help from a corrections officer, who called a medical emergency. *See id.* Medical staff took Mr. Richardson's blood pressure, but they did not provide any further treatment or document any of his symptoms, even though the symptoms were indicative of potentially serious heart problems. *See id.* Third, Mr. Richardson repeatedly complained to medical staff that he was not receiving his medications, and he included those complaints in written health services requests. *See id.* at ¶¶ 24-26. And on January 12, 2016, one of Mr. Richardson's medical providers wrote "meds ordered last week, not here yet." *See id.* at ¶ 26.[3] Despite the evidence to the contrary, Mr. Richardson's medical records indicate that he received his medications the entire time he was in the jail. *See id.* at ¶ 27.

From January 4 to January 12, 2016, Mr. Richardson received only Tylenol for pain management, and he was not provided with his prescribed opioid pain medication. *See id.* at ¶ 28. Abruptly discontinuing such medication can cause withdrawal symptoms, which is particularly dangerous for patients with heart problems. *See id.* at ¶ 17. Eventually, Defendant Fricke provided Mr. Richardson with high doses of morphine instead of his prescribed medication. *See id.* at ¶ 30. Mr. Richardson's toxicology report shows that the level of morphine in his system far exceeded the therapeutic limit. *See id.* The high doses of morphine exacerbated Mr. Richardson's respiratory and cardiac and respiratory problems. *See id.* at ¶ 31.

Defendant Fricke did not contact Mr. Richardson's treating physicians or any specialist before changing Mr. Richardson's prescription. *See id.* Indeed, despite Mr. Richardson's deteriorating health, his frequent complaints, his clear symptoms, and his history of heart

---

[3] This excerpt is from a handwritten note, and it is not clear exactly which medications the note is referencing. *See* Dkt. No. 1 at ¶ 26.

problems, medical staff at the jail never contacted Mr. Richardson's treating physicians, referred him to a specialist, or sent him to the hospital. *See id.* at ¶ 33. On the night before his death, Mr. Richardson sought medical assistance by alerting a corrections officer, John Doe Number 4, to the situation. *See id.* at ¶ 32. But John Doe Number 4 refused care and instead threatened Mr. Richardson with disciplinary action. *See id.* Mr. Richardson died of heart failure in the early morning hours of January 17, 2016. *See id.*

**B.    CMC and CBH**

CMC is a corporation that provides medical care at numerous county jails, and Defendant Umar is the president of CMC. *See id.* at ¶¶ 7, 11, 34. CMC has "engaged in a well-documented pattern and practice of providing inadequate and unqualified medical providers at the various facilities they manage, as well as inadequate medical care in general." *See id.* at ¶ 34. The complaint includes pages of troubling allegations regarding CMC's business practices and its track record of providing inadequate care in county jails throughout New York State. *See id.* at ¶¶ 35-50. But based on the allegations in the complaint, it is not clear what role, if any, CMC had at Schenectady County Jail during the time in question.

Plaintiff alleges that CBH is responsible for providing medical care at the Schenectady County Jail. *See id.* at ¶ 8. Plaintiff also alleges that, "upon information and belief, CBH Medical, P.C. is owned by Correctional Medical Care, Inc." *See id.* But the complaint includes no other allegations regarding CMC's relationship to CBH or CMC's role at the Schenectady County Jail. Additionally, the complaint does not contain any allegations relating to CBH or its policies, practices, or history of providing medical care.

**C.    Procedural History**

5

On April 14, 2017, Plaintiff Bernita Richardson filed the complaint in this action, and she filed a proposed amended complaint on October 17, 2017. *See* Dkt. Nos. 1, 30-4. In the proposed amended complaint, Plaintiff alleges three different causes of action: (1) deliberate indifference to a serious medical need in violation of the Fourteenth Amendment as to Defendants Fricke and John Does 1-4; (2) implementation of municipal policies that violated Mr. Richardson's constitutional rights as to Defendants CMC, CBH, Umar, Fricke, Schenectady County, and D'Agostino; and (3) conscious pain and suffering and wrongful death as to all Defendants. *See* Dkt. No. 30-4 at ¶¶ 55-72.

Defendants filed three separate motions to dismiss. The County Defendants filed one motion to dismiss. *See* Dkt. No. 18. Defendant Russell Fricke filed a separate motion to dismiss. *See* Dkt. No. 20. Finally, the CMC Defendants move to dismiss, and they also move to strike certain allegations in the complaint. *See* Dkt. No. 19. Along with her opposition, Plaintiff filed a cross-motion to amend the complaint. *See* Dkt. No. 30.

### III. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor

incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *see also Sutton ex rel. Rose v. Wachovia Secs., LLC*, 208 Fed. Appx. 27, 29-30 (2d Cir. 2006) (noting that, on a motion to dismiss, a court may take judicial notice of documents filed in another court).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.* at 570.

### IV. DISCUSSION

**A.     Motion to Amend**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the

7

opposing party, or futility, Rule 15's mandate must be obeyed." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir.2000) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 (1962)). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir.2002)). "Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted." *Waltz v. Bd. of Educ. of Hoosick Falls Cent. Sch. Dist.*, No. 12-CV-0507, 2013 WL 4811958, *4 (N.D.N.Y. Sept.10, 2013).

As Defendants have had sufficient opportunity to respond to the proposed amended complaint, and Plaintiff does not seek to add new defendants or claims, the merits of the motion to dismiss will be considered in light of the proposed amended complaint. See *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y.2012). If the proposed amended complaint cannot survive the motion to dismiss, then Plaintiff's cross-motion to amend will be denied as futile.

**B.    Deliberate Indifference**

As a pretrial detainee at the time of the incidents addressed in the complaint, Plaintiff's claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citation omitted). The Supreme Court recently distinguished between Eighth and Fourteenth Amendment excessive force claims, holding that a pretrial detainee need not demonstrate that an officer accused of using excessive force was subjectively aware that his use of force was unreasonable. *See Kingsley v. Hendrickson*, — U.S. —, 135 S.Ct. 2466, 2470-71 (2015).

8

In *Darnell*, the Second Circuit extended the *Kingsley* standard to a pretrial detainee's allegations related to unconstitutional conditions of confinement. *See Darnell*, 849 F.3d at 35. The court reasoned, "[u]nlike a violation of the Cruel and Unusual Punishments Clause [of the Eighth Amendment], an official can violate the Due Process Clause of the Fourteenth Amendment without meting out any punishment, which means that the Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." *Id.*

Although *Darnell* involved a challenge to conditions of confinement, district courts in this circuit have also held that *Kingsley* should be applied to pretrial detainees' claims of deliberate indifference to serious medical needs. *See Villafane v. Sposato*, No. 16-CV-3674, 2017 WL 4179855, *19 (E.D.N.Y. Aug. 22, 2017) ("District Courts in this circuit have applied *Kingsley* to claims for deliberate indifference to medical needs"); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 718 (S.D.N.Y. March 31, 2017) ("The reasoning of *Darnell* applies equally to claims of deliberate indifference to serious medical needs under the Fourteenth Amendment"); *see also Torrez v. Semple*, No. 17-CV-1211, 2017 WL 3841686, at *3 (D. Conn. Sept. 1, 2017) ("[F]or a claim of deliberate indifference to mental health needs or unconstitutional conditions of confinement under the Fourteenth Amendment, a pretrial detainee can satisfy the subjective element by showing that the defendants 'knew, or should have known, that the condition posed an excessive risk to health or safety'").

Under either the Eighth or the Fourteenth Amendment, a plaintiff's claim for deliberate indifference to a serious medical need is analyzed under a two-prong test. "First, 'the alleged deprivation of adequate medical care must be "sufficiently serious."'" *Grimmett v. Corizon Med. Assocs. of N.Y.*, No. 15-CV-7351, 2017 WL 2274485, *3 (S.D.N.Y. May 24, 2017) (quoting

*Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013)). "Second, the defendant must have acted with deliberate indifference, or a 'sufficiently culpable state of mind.'" *Id.* (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

    *1. Objective Prong*[4]

The objective prong requires "that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious'—that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)). To determine whether inadequate care is "sufficiently serious," a court must "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Where a plaintiff alleges that inadequate care was provided—instead of alleging a failure to provide any treatment—the inquiry focuses on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003); *see also Ray v. Zamilus*, No. 13-CV-2201, 2017 WL 4329722, *8 (S.D.N.Y. Sept. 27, 2017) (finding that where a "plaintiff suffered from a delay in treatment, rather than a complete lack of treatment, the objective element must be satisfied by harm that resulted from the delay").

---

[4] The standard for establishing the objective prong of a deliberate indifference claim was not affected by *Darnell*. *See Feliciano*, 2017 WL 1189747, at *10. Therefore, "the objective prong of a deliberate-indifference claim is the same regardless of whether the inmate is a convicted prisoner or a pretrial detainee." *Id.* The Court notes, however, that the term "objective prong" is somewhat misleading in the context of a Fourteenth Amendment deliberate indifference claim. As the Court explains below, after *Darnell*, both prongs of such a claim are now analyzed under an objective standard.

Generally, complaints of chest pain alone do not constitute a sufficiently serious medical condition. *See, e.g.*, *Hutchinson v. N.Y. State Corr. Officers*, No. 02-CV-2407, 2003 WL 22056997, *5 (S.D.N.Y. Sept. 4, 2003). However, a number of district courts in this circuit have found that heart conditions can be sufficiently serious under certain circumstances. *See Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, *4 (S.D.N.Y. Sept. 30, 2017) (holding that a prisoner satisfies the objective prong of the deliberate indifference inquiry when he has a pre-existing heart condition, presents with chest pain and arm stiffness, has not been provided with his medication, and is denied treatment); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254349, *5 (S.D.N.Y. Mar. 29, 2016) (finding that a plaintiff's condition was sufficiently serious where he presented with severe chest pain, high blood pressure, and a very low pulse rate); *Zikianda v. County of Albany*, No. 12-CV-1194, 2015 WL 5510956, *28 (N.D.N.Y. Sept. 15, 2015) ("[F]ailing to treat congestive heart failure, which can cause a patient's heart to stop beating, surely qualifies as a serious medical need").

It is well established that the state "'is not constitutionally obligated . . . to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail [him]self of' outside of prison." *Thompson v. Racette*, No. 11-CV-1372, 2012 WL 12884469, *2 (N.D.N.Y. Aug. 2, 2012) (alterations in original) (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)). A mere disagreement with a prescribed course of treatment is not sufficient to establish a violation of the Eighth or Fourteenth Amendment. *See Moolenaar v. Champagne*, No. 03-CV-1464, 2006 WL 2795339, *6 (N.D.N.Y. Sept. 26, 2006). But this is not a case of Plaintiff simply disagreeing with a particular medication or diagnostic technique. Plaintiff alleges that Mr. Richardson had a history of heart problems—including Brugada Syndrome and a history of heart attacks—and he frequently complained to the medical staff of his

11

symptoms, which included chest pain radiating into the left arm, dizziness, and "collapsing incidents." Despite Mr. Richardson's medical history and his troubling symptoms, Plaintiff alleges that Mr. Richardson was not provided any of his medications for the majority of the time he was in Schenectady County Jail, and that he was provided no other treatment for his heart conditions.

In a similar case in this district, the court found that the objective prong was satisfied where the plaintiff alleged that the treatment of the decedent's "congestive heart failure . . . was grossly inadequate from the start." *Zikianda*, 2015 WL 5510956, at \*29; *see also Johnson v. Wright*, 234 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) ("Although federal courts are reluctant to 'second guess medical judgments and constitutionalize [medical malpractice claims]' where the prisoner has actually received medical treatment, deliberate indifference will be found where 'the medical attention rendered was so woefully inadequate as to amount to no treatment at all'") (alterations in original) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). In this case, the Plaintiff's allegations satisfy the objective prong because Mr. Richardson faced a substantial risk of serious harm due to the deprivation of care.

*2. Mental Element Prong*

"After *Darnell*, 'deliberate indifference' is now 'defined objectively,' and the 'Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of serious harm.'" *Lloyd*, 246 F. Supp. at 719 (quoting *Darnell*, 849 F.3d at 35). A pretrial detainee suing for deliberate indifference under the Fourteenth Amendment "is required to show only that the prison official acted with objective recklessness, or that the defendant 'knew or should have known' that 'an

12

excessive risk to health or safety' would result." *Grimmett*, 2017 WL 2274485, at \*4 (quoting *Darnell*, 849 F.3d at 35).

### *3. Defendant Fricke and John Does 1-3*

It has long been the rule in this circuit that "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Clay v. Kellmurray*, 465 Fed. Appx. 46, 47 (2d Cir. 2012) (quoting *Chance*, 143 F.3d at 703). Even after *Darnell*, it remains the case that "something more than negligence is needed to elevate a claim of medical misconduct to a constitutional tort." *Davis v. McCready*, No. 14-CV-6405, 2017 WL 4803918, \*9 (S.D.N.Y. Oct. 23, 2017); *see also Darnell*, 849 F.3d at 36 ("But any § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence"). But distinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion. *See McCready*, 2017 WL 4803918, at \*9. The distinction between the two "depends on the degree of risk associated with the practitioner's conduct." *Id.*

Here, Defendant Fricke was allegedly aware of Mr. Richardson's history of heart problems, his complaints of chest and arm pain, and his recent hospitalization for chest pain. However, Plaintiff also alleges that Mr. Richardson was not provided with any medication during his first stint in the Schenectady County Jail, and he was not provided medication for nine of fourteen days during his second stint. He was not referred to a cardiologist, hospitalized, or provided any other treatment for his heart problems until his death on January 17, 2016, from a cardiac arrhythmia. In *Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, \*4 (S.D.N.Y. Sept. 30, 2017), the plaintiff had a pre-existing heart condition and complained of chest pain, as well as stiffness and numbness in the left arm. The court held that although those circumstances did not

13

require the physician's assistant to provide any specific form of treatment, some action should have been taken. *See id.* Therefore, the Court found that the plaintiff had sufficiently alleged objective recklessness. *See id.* In this case, accepting all allegations as true and drawing all reasonable inferences in Plaintiff's favor, Dr. Fricke knew or should have known that depriving Mr. Richardson of his medication and other forms of care would result in an excessive risk to Mr. Richardson's health.

Plaintiff also alleges that medical staff at the Schenectady County Jail omitted certain events from Mr. Richardson's medical records and fabricated other records. In particular, Plaintiff alleges that medical staff failed to record the fact that Mr. Richardson repeatedly collapsed in the days leading up to his death, that they did not document a medical emergency caused by Mr. Richardson's chest and arm pain, and that they falsified records pertaining to Mr. Richardson's medication. Therefore, Plaintiff has alleged that the medical staff acted with a sufficiently culpable state of mind and were deliberately indifferent to Mr. Richardson's serious medical needs. *See Grimmett*, 2017 WL 2274485, at *4 (finding the mental-state prong satisfied where the plaintiff alleged that a doctor intentionally omitted facts from the plaintiff's medical records).

*5. Municipal Liability*

A municipality "may not be held liable under Section 1983 unless the challenged action was performed pursuant to a municipal policy or custom." *Powers v. Gipson*, No. 04-CV-6338, 2004 WL 2123490, *2 (W.D.N.Y. Sept. 14, 2004) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)). This is because "[m]unicipalities are not subject to Section 1983 liability solely on the basis of a *respondeat superior* theory." *Id.*, at *2. As a result, to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the

14

municipality and "(1) 'the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officer[s]'; and (2) 'a causal connection—an "affirmative link"—between the policy and the deprivation of his constitutional rights.'" *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).

"Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses." *Powell v. Correc. Med. Care, Inc.*, No. 13-CV-6842, 2014 WL 4229980, *6 (S.D.N.Y. Aug. 15, 2014) (quoting *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990)); *see also Feder v. Sposato*, No. 11-CV-93, 2014 WL 1801137, *6 (E.D.N.Y. May 7, 2014) ("Because Armor was hired to fulfill the state's constitutional obligation to provide necessary medical care for its inmates, Armor . . . [was] 'acting under the color of state law' for purposes of Section 1983").

"A plaintiff may plead a municipal policy or custom by alleging: (1) a formal policy, promulgated or adopted by the entity; or (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was so permanent or well settled so as to constitute a 'custom or usage,' and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials." *Shepherd v. Powers*, No. 11-CV-6860, 2012 WL 4477241, *9 (S.D.N.Y. Sept. 27, 2012) (internal quotation marks omitted).

Here, Plaintiff alleges that the inadequate care was caused by a policy or custom of CMC. Indeed, the complaint contains pages of allegations regarding CMC's "pattern and practice of . . . providing inadequate medical care." *See* Dkt. No. 1 at ¶ 34. But Plaintiff does not allege that CMC was responsible for providing medical care at the Schenectady County Jail. Instead, she

15

alleges that CBH had that responsibility; it is not clear what role, if any, CMC played at the jail. *See id.* at ¶ 8. Although the complaint alleges, upon information and belief, that CBH is owned by CMC, it does not provide any further information regarding the relationship between the two entities. Even if CMC does own CBH, that alone is not sufficient to hold CMC liable for CBH's conduct. *See DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) ("As a general matter . . . a corporate relationship alone is not sufficient to bind [a parent corporation for the actions of its subsidiary]" (alteration in original)). Additionally, the complaint only mentions CBH a handful of times, and it does not contain any allegations that could allow the Court to conclude that CBH itself has a custom or practice of providing inadequate care.[5]

Similarly, Plaintiff's § 1983 allegations against the County Defendants rest entirely on CMC's alleged custom or practice of providing inadequate medical care. Since Plaintiff does not allege that CMC was responsible for providing medical care at the Schenectady County Jail, CMC's policies and practices do not provide a sufficient basis for establishing liability as to the County Defendants. Therefore, the County Defendants' motion to dismiss Plaintiff's § 1983 claims is granted.

## C. State Law Claims

### 1. The County Defendants

The County Defendants move to dismiss Plaintiff's state law claims against Schenectady County and D'Agostino. *See* Dkt. No. 18-1 at 6, 11. First, the County Defendants argue that Defendant D'Agostino cannot be held liable for the acts or omissions of corrections officers. *See*

---

[5] The CMC Defendants move to strike large chunks of Plaintiff's complaint that are related to the allegations of municipal liability against CMC. *See* Dkt. No. 19-2 at 19-23. Since the Court dismisses the municipal liability claims against CMC and CBH, the motion to strike is denied as moot.

16

*id.* at 6 (citing *Barr v. Albany County*, 50 N.Y.2d 247, 257 (1980)).  Second, the County Defendants argue that state law claims against the County must be dismissed because it may not be held vicariously liable for the acts of corrections officers.  *See id.* at 11 (citing *De Ratafia v. County of Columbia*, No. 13-CV-174, 2013 WL 5423871, *10 (N.D.N.Y. Sept. 26, 2013)).

Plaintiff fails to address these arguments in her opposition to the County Defendants' motion to dismiss.  Since Plaintiff does not assert any other basis for liability under state law against the County Defendants, Plaintiff's state law claims against the County Defendants are dismissed.  *See Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim"); *see also Div. 1181 Amalgamated Transit Union–N.Y. Emps. Pension Fund v. R & C Transit, Inc.*, No. 16-CV-2481, 2018 WL 794572, *4 (E.D.N.Y. Feb. 7, 2018) (collecting cases).

*2. The CMC Defendants*

The CMC Defendants argue that Plaintiff's state law claims should be dismissed because Plaintiff did not file a certificate of merit along with her complaint as required by C.P.L.R. § 3012-a.  *See* Dkt. No. 19-2 at 16.  The statute "requires counsel to submit a certificate of merit declaring that he or she has consulted with at least one licensed physician who is knowledgeable regarding the relevant issues in the action, has reviewed the case," and has concluded that there is a reasonable basis for commencement of an action.  *Calcagno v. Orthopedic Assoc. of Dutchess Cty., PC*, 148 A.D.3d 1279, 1280 (3d Dep't 2017).  However, "the mere failure to timely file [a certificate of merit] does not support dismissal of [an] action," *id.*, and Plaintiff submitted a

17

certificate of merit on November 13, 2017, *see* Dkt. No. 37. Therefore, the CMC Defendants' motion to dismiss Plaintiff's state law claims is denied.

**D.    Punitive Damages**

The CMC Defendants argue that Plaintiff has failed to allege facts that would support an award of punitive damages. *See* Dkt. No. 19-2 at 18-19. "To recover punitive damages under § 1983 against a government official in his individual capacity, the Plaintiff must show that the official acted with a malicious or evil intent or in callous disregard of the Plaintiff's federally protected rights." *Helijas*, 2016 WL 5374124, at *17 (quoting *Pritchard v. Town of New Hartford*, No. 14-CV-1477, 2016 WL 4523986, *4 n.2 (N.D.N.Y. Aug. 22, 2016)). In this case, the question of whether Defendants possessed such "callous disregard" is better addressed with the benefit of an evidentiary record. *See id.*; *see also Phelan ex rel. Phelan v. Torres*, No. 04-CV-3538, 2005 WL 4655382, *15 (E.D.N.Y. Sept. 20, 2005) ("Generally, the issue of whether to award punitive damages is an issue for the jury to decide based on an evaluation of plaintiff's proof of 'sufficiently serious misconduct'") (quoting *Smith v. Wade*, 461 U.S. 30, 52 (1983)).

## V. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's cross-motion to amend (Dkt. No. 30) is **GRANTED**; and the Court further

**ORDERS** that the County Defendants' motion to dismiss (Dkt. No. 18) is **GRANTED** and Defendants Schenectady County and Dominic D'Agostino may be terminated;[6] and the Court further

**ORDERS** that Defendant Fricke's motion to dismiss (Dkt. No. 20) is **DENIED**; and the Court further

**ORDERS** that the CMC Defendants' motion to dismiss (Dkt. No. 19) is **GRANTED in part** as to the deliberate indifference and municipal liability claims against Correctional Medical Care, Inc., CBH Medical, P.C., and Emre Umar, and the motion is **DENIED in part** as to Plaintiff's state law claims, and Plaintiff's deliberate indifference claims against Defendants Russell Fricke and John Does 1-3; and the Court further

**ORDERS** that the CMC Defendants' motion to strike (Dkt. No. 19) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 28, 2018
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[6] The County Defendants do not move to dismiss the deliberate indifference claim against John Doe Number 4.