UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BERNITA RICHARDSON, *as Administratrix
of the Estate of Jimmy Richardson*,

                                              **Plaintiff,**

   vs.

                                                                                    9:17-CV-420
                                                                                    (MAD/ATB)

RUSSELL FRICKE, *Medical Director
at the Schenectady County Correctional Facility*,

                                              **Defendant.**
_____

**APPEARANCES:**                                     **OF COUNSEL:**

**LAW OFFICES OF ELMER ROBERT**        **ELMER R. KEACH, III, ESQ.**
**KEACH, III, P.C.**                                   **MARIA K. DYSON, ESQ.**
One Pine West Plaza, Suite 109
Albany, New York 12205
Attorneys for Plaintiff

**MAYNARD, O'CONNOR, SMITH &**          **KAREN A. BUTLER, ESQ.**
**CATALINOTTO, LLP**                               **EMILY PHILLIPS, ESQ.**
6 Tower Place
Albany, New York 12203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Bernita Richardson, as administratrix of the estate of Jimmy Richardson (hereinafter "Mr. Richardson" or the "decedent"), commenced this action on April 14, 2017, alleging federal and state law claims against Defendants Correctional Medical Care, Inc. ("CMC"), CBH Medical, P.C. ("CBH"), Emre Umar, John Does 1–3 (collectively, the "CMC

Defendants"), Schenectady County, Sheriff Dominic D'Agostino, John Doe 4 (collectively, the "County Defendants"), and Doctor Russell Fricke.  *See* Dkt. No. 1.  Plaintiff's claims arise out of Mr. Richardson's medical care while he was incarcerated at the Schenectady County Correctional Facility.

In a Memorandum-Decision and Order dated March 28, 2018, the Court granted the County Defendants' motion to dismiss in its entirety, dismissed the deliberate indifference and municipal liability claims against Defendants CMC, CBH, and Umar, and denied the motion as to Plaintiff's deliberate indifference and state law claims as to Defendants Fricke and John Does 1-3.  *See* Dkt. No. 39.  On January 14, 2021, the Court issued another Memorandum-Decision and Order granting summary judgment on all of Plaintiff's remaining claims and terminating all other Defendants from this action with the exception of Plaintiff's deliberate indifference claim against Defendant Fricke, who remains the sole defendant in this action.

On January 21, 2021, Defendant Fricke filed a motion to reconsider asking the Court to dismiss Plaintiff's claim for deliberate indifference against him.  On February 18, 2021, Plaintiff filed a cross-motion for entry of judgment for Plaintiff's state law claims, and the dismissal of claims against Defendants CMC and CBH.  Dkt. No. 133.  Defendant filed a response opposing Plaintiff's cross-motion on March 11, 2021.  Dkt. No. 134.  Based on the following, both Defendant's motion to reconsider and Plaintiff's cross-motion for entry of judgment are denied.

## II. BACKGROUND

For a complete recitation of the relevant background, the parties are referred to the Court's January 14, 2021 Memorandum-Decision and Order.  *See* Dkt. No. 128.

## III. DISCUSSION

**A.     Defendant's Motion to Reconsider**

Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g). "In order to prevail on a motion for reconsideration, the movant must satisfy stringent requirements." *In re C-TC 9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 2 (N.D.N.Y. 1995). Such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The prevailing rule "recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citation omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to re[-]litigate an issue already decided." *Shrader*, 70 F.3d at 257.

Here, there is no intervening change in controlling law, nor is there new evidence not previously available. Therefore, Defendant's motion for reconsideration is seeking to prevent manifest injustice. Defendant raises two issues of concern for the Court. First, Defendant asserts that the Court improperly held that "the Second Circuit has made clear that expert medical testimony is not required to proceed on a deliberate indifference claim, whereas such testimony is required for a state-law medical malpractice claim." Dkt. No. 129 at 4 (quoting Dkt. No. 128 at 45). Second, Defendant asserts that the Court incorrectly interpreted Mr. Richardson's medical records. *Id*. at 3-6. Plaintiff objects to Defendant's motion and asserts that the evidence Defendant cites only further underscores the Court's opinion.

*1. Requirement of Expert Testimony*

Defendant Fricke asserts that while the Court recognized in its decision that the Second Circuit has held that medical expert testimony is not required for deliberate indifference claims, "the court completely overlooked the more relevant case of *Zikianda*." Dkt. No. 129-2 at 1 (citing *Zikianda v. Cty. of Albany*, No. 1:12-CV-1194, 2015 WL 5510956, *1 (N.D.N.Y. Sept. 15, 2015)). Defendant is incorrect.

Foremost, Defendant is incorrect that the Court "completely overlooked" *Zikianda* as the Court cited this case multiple times in its decision. *See* Dkt. No. 128 at 20-21. Second, the Northern District of New York does not have the authority to overrule the clear authority of the Second Circuit, which has stated, "[w]e have never required plaintiffs alleging a denial of adequate medical care in a Section 1983 action to produce expert medical testimony."[1] *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994). Regardless, Defendant's interpretation of *Zikianda* is inaccurate and does not stand for the proposition that expert medical testimony is required in deliberate indifference claims.

In *Zikianda*, the plaintiff was the administrator of the estate of Irene Bamenga, the decedent, and as such, sued the defendants alleging that they violated the rights of the decedent while she was in their custody on an immigration detainer, causing her death. *Zikianda*, 2015 WL 5510956, at *1. While the decedent was in the custody of immigration officials, she advised officers that she had been diagnosed with congestive heart failure ("CHF") and needed to take medication daily. *Id*. "An intake receipt executed by that officer indicated that Decedent was on 'lots of' medication." *Id*. The "decedent completed two request forms, complaining that she had

---

[1] The Court notes that while it was precluded from reviewing Dr. Charash's inadmissible report, nothing in the Court's decision precludes either party from presenting expert testimony at trial that complies with the relevant rules of the Federal Rules of Evidence and the Federal Rules of Civil Procedure.

4

not been provided her full dosage of medications and that she had been suffering from shortness of breath, palpitations when lying down, and dizziness when standing." *Id*. at *2. The decedent continued to complain that she had not received her medications and other inmates alerted staff that she appeared sick. *Id*. Just a few days later, the decedent was found dead and the cause of death was listed as cardiomyopathy. *Id*.

The plaintiff brought claims for, *inter alia*, medical malpractice and deliberate indifference against various defendants. *Id*. at *3-15. The Court denied summary judgment on the plaintiff's deliberate indifference claims. *Id*. at *4-34. In support of her medical malpractice claims, the plaintiff provided expert medical testimony supporting that the defendants' conduct caused the decedent's death. *Id*. at *33. The court held that this additional evidence supported the plaintiff's deliberate indifference claims but did not find that such evidence was necessary to establish deliberate indifference. *Id*. Indeed, the standard Defendant in this action cites speaks only to the burden in medical malpractice cases. Dkt. No. 129 at 2 (quoting *Zikianda*, 2015 WL 5510956, at *33) ("To the extent that Plaintiff makes **medical malpractice** claims, the Court notes that 'a plaintiff asserting a **medical malpractice** claim must demonstrate that the doctor deviated from acceptable medical practice, and that such deviation was a proximate cause of the plaintiff's injury'") (emphasis added).

While the court held that "a plaintiff must prove that Defendants' conduct was the cause of his injury to prevail on a constitutional claim," it did not state that this required expert testimony. *Id*. Rather, the Court stated,

> a jury could certainly use evidence that moving Defendants took
> action to prevent Bamenga from receiving medication after she first
> arrived at the Allegany County Jail, did not perform tests necessary
> to evaluate her condition, and then did nothing of substance to
> ensure that the dosages of medication she received were proper for

5

> her and conclude that Defendants contributed to a disruption in
> medication and failures in treatment that eventually caused
> Bamenga to die.

*Zikianda*, 2015 WL 5510956, at *33. The court went on to state, "[m]oreover, Plaintiff has provided the expert evidence necessary both for a jury to come to this conclusion generally and within the context of a medical malpractice claim." *Id*. at *34. Thus, the expert evidence may have strengthened the plaintiff's case, but, consistent with the Court's opinion, it was not necessary to establish a claim for deliberate indifference.

The court's opinion in *Zikianda* is therefore consistent with the Second Circuit's opinion in *Hathaway* which held that

> We have never required plaintiffs alleging a denial of adequate
> medical care in a Section 1983 action to produce expert medical
> testimony. The inquiry remains whether the treating physician or
> other prison official was deliberately indifferent to a prisoner's
> serious medical needs, not whether the doctor's conduct is
> actionable under state malpractice law. Expert testimony certainly
> could have bolstered Hathaway's case at trial, but the absence of
> such expert proof does not mandate dismissal of his action where
> the facts support a finding of deliberate indifference.

*Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994); *see also Missell v. Davis*, No. 17-CV-6140, 2019 WL 1119563, *7 (W.D.N.Y. Mar. 12, 2019) ("the Court is unwilling to dismiss Missell's constitutional claims for lack of expert testimony, especially where Leids has failed to demonstrate that such a requirement exists as a matter of law"); *Gilliam v. Hamula*, No. 06-CV-6351, 2011 WL 6148943, *16 (W.D.N.Y. Dec. 12, 2011) ("Deliberate indifference cases do not necessarily need expert medical evidence to establish a plaintiff's case"); *Chinnici v. Centurion of Vermont, LLC*, No. 2:16-CV-264, 2018 WL 6002116, *9 (D. Vt. Oct. 10, 2018); *Mathews v. Pallito*, No. 5:12-CV-58, 2014 WL 4805333, *10 (D. Vt. Sept. 26, 2014) ("Expert testimony is not necessary to support a deliberate indifference claim under the Eighth Amendment"); *McAfee*

*v. Naqvi*, No. 3:14-CV-410, 2017 WL 3184171, *7 (D. Conn. July 26, 2017); *Cumberbatch v. Port Auth. of New York & New Jersey*, No. 03 CIV. 749, 2006 WL 3543670, *9 (S.D.N.Y. Dec. 5, 2006) ("Contrary to Defendants' suggestion, the absence of a medical expert's opinion in this case is not at all fatal to Plaintiffs' claims").

Further, and most importantly, expert medical testimony is not required because Plaintiff's injury is a Constitutional one—a violation of his Fourteenth Amendment rights. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment") (internal and other citations omitted). "A pretrial detainee's claims are evaluated under the Due Process Clause because, [p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise." *Id*. (internal citations and quotation marks omitted). "A detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id*. (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

In *Estelle*, while examining the Eighth Amendment's standards, the Supreme Court held,

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death," . . . the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose.

*Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (internal and other citations omitted).

The method, manner, and result are not determinative on this issue. *See id*. at 104-05 ("This is true whether the indifference is manifested by prison doctors in their response to the

7

prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983"). Rather, where the prisoner has a sufficiently serious condition it is the prison official's actions that determine whether a constitutional violation has occurred. *Id.* at 106 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment"); *see also City of Revere*, 463 U.S. 239 at 245 ("In short, the injured detainee's constitutional right is to receive the needed medical treatment").

Plaintiff's First Amended Complaint claims constitutional injuries for Defendant "failing to deny the Decedent his various medications, and to ignore the Decedent's serious medical symptoms including pain, chest pain, dizziness, anxiety, and loss of consciousness." Dkt. No. 30-3 at ¶ 57. At summary judgment, the Court determined that Plaintiff had established an issue of material fact as to whether a jury could reasonably find that Mr. Richardson's conditions imposed an excessive risk to his health and safety and that by failing to examine his medical file, Defendant Fricke recklessly failed to act with reasonable care to mitigate the risk that they posed to the Mr. Richardson. Dkt. No. 128 at 28.

Whether Defendant's deliberate indifference caused Plaintiff's death is likely outside the sphere of the common knowledge of the lay person, however, Plaintiff has already established through Mr. Richardson's medical records that he suffered from a serious medical condition—Brugada syndrome and a history of heart attacks. As Plaintiff has also raised an issue of material fact as to whether Mr. Richardson was deliberately indifferent' to Plaintiff's medical need,

8

Plaintiff has established a question of material fact as to whether Mr. Richardson's Fourteenth Amendment Rights were violated and summary judgment is therefore not warranted.

Regardless, this issue is academic. Defendant did not raise the issue of whether Plaintiff needed medical expert testimony to establish his deliberate indifference claims at summary judgment. *See* Dkt. No. 87-14; Dkt. No. 111. Defendant only examined whether Plaintiff had met her burden of causation as to her medical malpractice claims. *See id*.; Dkt. No. 111. Regarding the influence of Dr. Charash's opinion on Plaintiff deliberate indifference claims, Defendant merely stated that "this expert's testimony may only apply to the medical malpractice issues at hand, and may not be applied to the Constitutional claims." Dkt. No. 111 at 2. Defendants later state, "Plaintiff has provided no expert support that any of the allegations constitution a deviation from the standard of care."[2] *Id*. at 6. As the issue of a whether a medical expert is required to establish causation in a deliberate indifference case beyond the deprivation of adequate care is—at best—unclear, the Court declines Defendant's invitation to take up this issue on a motion to reconsider. *See Boston v. Suffolk Cty., New York*, 326 F. Supp. 3d 1, 21 (E.D.N.Y. 2018) (holding that the plaintiff's failure to provide expert testimony at summary judgment to establish that his condition was sufficiently serious was immaterial as the inherent nature of the plaintiff's condition was serious enough to create a question of material fact as to whether the defendants were deliberately indifferent by failing to treat the plaintiff. Further, "[w]hile there [was] no evidence that the delay in medical treatment caused or exacerbated his condition, the Defendants did not raise that issue, and the Court therefore declines to address it").

Further, the motion for reconsideration simply directs the Court to *Zikianda* for the inaccurate position that the Northern District has overruled the Second Circuit. *See id*. Plaintiff's

---

[2] The Court, again, notes that this is not the correct standard for deliberate indifference claims.

opposition to this motion consists of only two sentences that address this issue, "[t]he Defendant's arguments do nothing to undermine that decision given the relevant standard of review. Concerns about causation are also the province of the jury." Dkt. No. 133-1 at 1. As this issue was not substantively argued at summary judgment, nor is it now, it is not appropriate for the Court to address this issue now. *See Taylor v. Cuomo*, No. 07-CV-2138, 2008 WL 63283, *3 (E.D.N.Y. Jan. 3, 2008) ("Petitioner's claim of actual innocence as an independent basis for relief, and the resulting standard for evaluating such a claim, is a new issue that cannot be raised for the first time on a motion for reconsideration"); *Henry v. All. for Health, Inc*., No. 05-CV-1264, 2006 WL 3050873, *1 (E.D.N.Y. Oct. 18, 2006) ("[N]or is it proper to raise new arguments and issues in a motion for reconsideration") (citations omitted). The Court therefore denies Defendant's motion to reconsider.

### *2. The Court's interpretation of the Records*

Second, Defendant asserts that the Court based its decision on a misinterpreted the Plaintiff's medical records. Dkt. No. 129-2 at 3-6. Defendant's motion to reconsider merely reiterates its arguments at summary judgment. In its decision, the Court highlighted that on January 11, 2016, Mr. Richardson submitted a health service request complaining that he was in pain and had not received his medication. Dkt. No. 87-6. The Court stated that by that time, the records demonstrated that Plaintiff had not received at least some of his medication. Dkt. No. 128 at 25-26. Plaintiff had made two requests on the 11 and a similar request for his medications on January 9. Dkt. No. 87-6 at 14, 16. Specifically, the Court was referencing Mr. Richardson's proscribed morphine. Dkt. No. 87-6 at 6. Defendant concedes that the morphine had not yet arrived when Plaintiff was seen on the 12 and that Defendant Fricke wrote a prescription on January 13, 2016—which is entirely consistent with the Court's opinion and therefore not "clearly

erroneous" as Defendant asserts. Further, Defendant ordered the morphine on the 13, but on the 11th, the RN wrote that the morphine prescription issue had been resolved. This only furthers Plaintiff's position that the records may have been altered and inaccurate. Regardless, Defendant is merely attempting for reargue the issues before the Court. Defendant's motion to reconsider is therefore denied. *Royal Indem. Co. v. Patel*, No. 5:03-CV-999, 2007 WL 2287881, *1 (N.D.N.Y. Aug. 7, 2007) ("A motion for reconsideration is not an opportunity to reargue that which was previously decided").

**B.** **Plaintiff's Motion for Entry of Judgment**

Plaintiff has cross moved for an entry of judgment of Plaintiff's state law claims and the Court's decision dismissing the her state law claims, and the dismissal of claims against Correctional Medical Care and CBH Medical. Dkt. No. 133-1. Plaintiff asserts that in light of the COVID-19 pandemic, it is unlikely that this case will be tried soon. *Id*. at 1-2. Second, that if the Second Circuit reversed the Court, Plaintiff would have to have two separate trials for similar cases. *Id*. at 2. Finally, Plaintiff asserts that Defendant's insurance does not cover civil rights violations and collecting judgment against Defendant would be a difficult and long process. *Id*. at 2-3. Plaintiff's request is denied.

Where, as here, "an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.'" Fed. R. Civ. P. 54(b). "The determination of whether to grant Rule 54(b) certification is committed to the discretion of the district court and will be set aside only for an abuse of discretion." *Hogan v. Consolidated Rail Corp*., 961 F.2d 1021, 1025 (2d Cir. 1992). The district court's discretion, however, is to be exercised sparingly in light of the "'historic federal policy

against piecemeal appeals.'" *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)). Certification under Rule 54(b) should be granted only "where there are interest[s] of sound judicial administration and efficiency to be served, or . . . where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Hogan*, 961 F.2d at 1025 (internal quotation marks and citations omitted).

Foremost, the Northern District of New York has been working at full capacity since Spring of 2021, and the COVID-19 pandemic, as of right now, would now have little effect on a trial date. Rather, the Court is fully prepared to issue a date for trial following this decision. Plaintiff's third concern has no effect on this decision as Defendant's insurance will allegedly not pay for Plaintiff's deliberate indifference claims regardless.

Finally, the factual similarities of the case support that Plaintiff's motion should be denied. The Second Circuit in *Cullen v. Margiotta*, 618 F.2d 226 (2d Cir. 1980), reversed a district court's Rule 54(b) certification, concluding that "'[j]udicial economy will best be served by delaying appeal until all issues can be confronted by th[e appellate] court in a unified package[.]" *Id*. at 228. The court explained that such an outcome was "particularly" appropriate where "the adjudicated and pending claims are closely related and stem from essentially the same factual allegations." *Id*. Therefore, Plaintiff's motion for entry of judgment is denied.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Defendant's motion for reconsideration (Dkt. No. 129) is **DENIED;** and the Court further

**ORDERS** that Plaintiff's Cross Motion for Entry of Judgment (Dkt. No. 133) is **DENIED**; and the Court further

**ORDERS** that a jury trial will be begin on September 27, 2021, a separate pre-trial order will be filed; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 10, 2021
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge